# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JH

| | |
|---|---|
| LUCA DILEO, a Minor, by FRANK DILEO, his Father and Next Friend, ) ) ) Plaintiff, ) ) ) v. ) ) VI-JON LABORATORIES, INC. and ) DISNEY ENTERPRISES, INC., ) ) ) Defendants. ) ------------------------------------------------------------) VI-JON LABORATORIES, INC., ) ) Third-Party Plaintiff, ) ) v. ) ) PRETIUM PACKAGING, et al., ) ) Third-Party Defendants. ) ) | Case No. 05 C 2877<br><br>Magistrate Judge<br>Martin C. Ashman |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of third-party defendant Pretium Packaging ("Pretium") to stay the contribution claim of defendant and third-party plaintiff Vi-Jon Laboratories, Inc. ("Vi-Jon"), against Pretium, and to compel arbitration on this matter. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, the Court grants Pretium's motion.

## I. Background

The lawsuit from which this motion stems involves injuries suffered by Luca Dileo ("Dileo") when his pajamas caught fire. Dileo alleges that, during this incident, a bottle of nail polish remover sold by Vi-Jon ignited and caused him injury. (Dileo Compl. ¶ 16.) Dileo's suit against Vi-Jon alleges that the nail polish remover container was defectively designed and unreasonably dangerous, and that Vi-Jon is therefore liable to Dileo for his injuries. (Vi-Jon's Resp. at 2.)

After Dileo's suit was filed, Vi-Jon filed a third-party complaint against Pretium and several other persons and entities. (Pretium's Mot. at 2.) Pretium is in the business of manufacturing bottles such as the nail polish remover bottle that allegedly caused Dileo harm. Vi-Jon purchased nail polish remover bottles from Pretium, and then sold nail polish remover to Dileo. Vi-Jon alleges that Pretium owed a duty to manufacture bottles meeting industry standards of safety and quality, that Pretium breached that duty, and that Pretium is thus at least partially at fault and responsible for any liability that Vi-Jon may receive in the underlying suit. (Vi-Jon Compl. ¶ 35.) In short, for the purposes of this motion, this third-party complaint contains claims for contribution.

In connection with the sale of the nail polish remover bottles, Vi-Jon and Pretium entered into a supply agreement that contained an arbitration clause ("Arbitration Clause"). This Arbitration Clause states,

> 18. ARBITRATION. Any claim or controversy arising out of or relating to this Agreement or breach of this Agreement shall be settled by binding arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Any arbitration shall take place in St. Louis, Missouri. Any decision rendered in any arbitration shall be accepted by both

parties as final and binding and shall be controlled by the Unites States Federal
Arbitration Act, 9 U.S.C. §§ 1, et seq., [and] any judgment awarded may be
entered and recorded in any court of competent jurisdiction.

(Pretium's Mot. Ex. C, ¶ 18.) The supply agreement also included an indemnification clause

("Indemnification Clause"), in which Pretium agreed to "save and hold Vi-Jon harmless from and

to indemnify Vi-Jon against all liability, loss, claims, demands, damage and expense, including

in the case of litigation . . . ." (Pretium's Mot. Ex. C, Terms and Conditions, ex. C, ¶ 13.)

In the instant motion, Pretium urges this Court to stay the court proceedings against

Pretium and to compel arbitration of Vi-Jon's contribution claim against Pretium.

## II. Discussion

The supply agreement between Vi-Jon and Pretium is covered by the Federal Arbitration

Act ("FAA").[1] Any arbitration agreement that is covered by the FAA is "valid, irrevocable, and

enforceable." 9 U.S.C. § 2. If a party to an arbitration agreement refuses to arbitrate, the FAA

provides that the aggrieved party may petition a federal district court to compel arbitration. 9

U.S.C. § 4. In determining whether the FAA requires the Court to compel Vi-Jon and Pretium to

arbitrate, the Court must determine first, whether a valid arbitration agreement exists, and

second, whether that agreement covers the claims presently at issue, to wit, Vi-Jon's contribution

claim against Pretium. *Pro-Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

*See also Johnston v. Arrow Fin. Servs., LLC*, 06 C 0013, 2006 WL 2710663, at *4 (N.D. Ill.

---

[1] The FAA applies to provisions in any contract "evidencing a transaction involving
commerce to settle by arbitration a controversy thereafter arising out of such contract or
transaction." 9 U.S.C. § 2. The parties do not dispute that the FAA applies to the supply
agreement.

Sept. 15, 2006) ("The existence of a valid arbitration agreement is not itself enough to direct parties to arbitrate a dispute. For the court to compel arbitration it must find that the agreement covers the dispute at issue."). If both of these conditions are met, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

The parties do not dispute that the supply agreement is a valid contract that contains a valid arbitration agreement. Thus, the issue for this Court becomes whether the Arbitration Clause in the supply agreement encompasses Vi-Jon's contribution claim. The Court finds that it does.

As in any case involving a contract, the Court begins by considering the contract's language in order to determine the parties' intent. The Court, if possible, will infer the intent of the parties solely by looking to the contract itself, which must be read as a whole. *See O'Shield v. Lakeside Bank*, 781 N.E.2d 1114, 1119, 335 Ill. App. 3d 834, 839 (App. Ct. 2002) ("Where a contract is unambiguous, its express provisions govern and its language, as a whole, is to be given its plain and ordinary meaning."). In construing an arbitration clause, the Court must be mindful of the strong federal policy favoring arbitration; thus, the Court "resolve[s] ambiguities as to the scope of the arbitration clause in favor of arbitration." *Kahalnik v. John Hancock Funds, Inc.*, 95 C 3933, 1996 WL 145842, at *3 (N.D. Ill. Mar. 27, 1996). The Arbitration Clause purports to apply to "[a]ny claim or controversy arising out of or relating to this Agreement or breach of this Agreement." (Pretium's Mot. Ex. C, ¶ 18.) This language is unambiguous and all-encompassing, and it covers Vi-Jon's contribution claims against Pretium.

Because the Arbitration Clause covers Vi-Jon's claim for contribution, the Court must stay the court proceedings involving Pretium and compel arbitration.

The Court briefly addresses Vi-Jon's arguments. Vi-Jon argues that the Arbitration Clause does not envision the contribution claims at issue in this case. According to Vi-Jon, the Arbitration Clause covers only "disputes directly between Vi-Jon and Pretium which arose out of the Supply Agreement," such as a failure to deliver or pay for goods under the contract. (Vi-Jon's Resp. at 4 (emphasis omitted).) Presumably, Vi-Jon believes that the present situation is different than what was envisioned by the Arbitration Clause because Vi-Jon and Pretium are alleged to have wronged a third party (i.e., Dileo), not a party to the contract. Vi-Jon also characterizes its contribution claim as "extra-contractual" and "outside the scope of the parties' arbitration agreement." (Vi-Jon's Resp. at 5.) Following this reasoning, the Arbitration Clause does not envision the contribution claim and thus does not apply, Vi-Jon argues, meaning that the Court should not grant Pretium's motion to stay and compel.

The Court finds that the Arbitration Clause does not permit the Court to carve contribution claims out of the scope of the Arbitration Clause's applicability. The Clause refers to "[a]ny claim or controversy." This language is unambiguous and sweeping. By its terms, the Clause does not distinguish between "direct" actions, such as a failure to pay or deliver, and actions that arise out of the alleged failure of the goods delivered. The language of the Clause does not lead the Court to believe that the parties had this distinction in mind. Thus, the Court is not convinced that the Clause was meant to exclude contribution claims from its purview.

The existence of the Indemnification Clause in the supply agreement does not persuade the Court otherwise. Vi-Jon argues that the existence of the Indemnification Clause, which

provides that Pretium will indemnify Vi-Jon ". . . in the case of litigation," (Pretium's Mot. Ex. B, ¶ 18), indicates that the Arbitration Clause is not as all-encompassing as the Clause's words suggest. (Vi-Jon's Resp. at 4-5.) Vi-Jon argues that the presence of the Indemnification Clause indicates that the parties assumed that in-court litigation is a possibility at least in some circumstances. Underlying Vi-Jon's reasoning is that "litigation" is different than and distinct from "arbitration," and that the supply agreement envisions both. Apparently, under this interpretation, Vi-Jon's contribution claim presents a conflict–is the contribution claim to be litigated pursuant to the Indemnification Clause or arbitrated pursuant to the Arbitration Clause? Vi-Jon argues that the Court should follow the canon of contract construction that states that, where a contract contains a general and a specific clause, the specific clause should be followed. (Vi-Jon's Resp. at 4-5 (citing *Central States, S.E. & S.W. Areas Pension Fund v. George W. Burnett, Inc.*, 451 F. Supp. 2d 969, 981 (N.D. Ill. 2006))). Because the Indemnification Clause is more specific–it has less-encompassing language–the Court should deny the motion to stay and compel.

The Court does not follow this canon of contract construction because the clauses–the Arbitration Clause and the Indemnification Clause–are not contradictory. Despite what Vi-Jon's argument implies, the term "litigation" is not necessarily confined to proceedings before a court. Arbitration can in some contexts be considered "litigation," and many discussions assume that arbitration is a type of litigation. *See, e.g.*, L. Anthony George, *Controlling Legal Costs in Labor Arbitration*, 28 Colo. Law. 75 (1999) (referring to labor arbitration as "a type of litigation"). The Court believes that this interpretation meshes well with contract law's directive to consider the contract "as a whole," *O'Shield*, 781 N.E.2d at 1119, 335 Ill. App. 3d at 839, because the Court's

interpretation maintains the validity and applicability of both the Arbitration and the Indemnification Clauses. Defining "litigation" as including "arbitration" maintains harmony between the Indemnification and Arbitration Clauses, whereas Vi-Jon's defining "litigation" as not including "arbitration" assumes unnecessary dissonance. In short, the presence of the Indemnification Clause does not militate a finding that the parties intended the Arbitration Clause to be anything other than all-encompassing.

Vi-Jon also argues that the Court should deny Pretium's motion to stay and compel because doing so will result in piecemeal litigation. (Vi-Jon's Resp. at 6.) By granting the motion, the necessary result is that a party who allegedly is partially at fault in Dileo's injury–i.e., Pretium–is no longer a party to the underlying suit, and if immediate arbitration is compelled, the arbitration may predate a finding of liability in the underlying suit. Vi-Jon argues that this will result in "substantial prejudice to any party in the litigation who would not be a party to the arbitration." (Vi-Jon's Resp. at 5.)

Although the Court is sympathetic to Vi-Jon's concerns, the FAA does not allow the Court to consider the various policies and effects of the FAA on the various parties and players. According to the Supreme Court, the FAA "leaves no place for the exercise of discretion by a district court," but directs the Court to stay the litigation and direct the parties to arbitrate the dispute. *Dean Witter Reynolds*, 470 U.S. at 218. *See also Kahalnik*, 1996 WL 145842, at *4 ("Further, the Supreme Court holds that, in cases involving a number of parties where only some are privy to an arbitration agreement, 'federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.'" (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 (1983)). Thus, despite any inefficiency that might result, the Court

must stay Vi-Jon's contribution claim and compel the parties to arbitrate any finding of fault at the conclusion of the underlying suit.

The parties' briefs point to state laws that allow or prohibit contribution claims from being brought during the pendency of the underlying suit. (*See* Vi-Jon's Resp. at 5-6 (citing 740 Ill. Comp. Stat. 100/5, which "requires third-party contribution actions to be brought while the underlying litigation is pending, or the contribution action will be barred"); Pretium's Reply at 6 (citing V.A.M.R. §§ 52.11(a), 55.23(f), under which contributions claims are permissive claims, meaning that the plaintiff may file a contribution claim after a judgment).) As the Court has described, the FAA applies to this arbitration agreement, and the FAA directs this Court to stay the contribution claim. Although the Court "compels" the parties to arbitrate this contribution claim, the Court recognizes that the supply agreement contains a choice of law clause that states that Missouri law applies. (Pretium's Mot. Ex. C, ¶ 17.) Because Missouri law allows a plaintiff to bring a contribution claim after a judgment is rendered, *see* V.A.M.R. 52.11(a), the Court holds that Vi-Jon and Pretium may refrain from commencing the arbitration of the contribution claim until the conclusion of the underlying case.

### III. Conclusion

For the foregoing reasons, the Court grants Pretium's motion to stay and compel.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: April 12, 2007.

Copies have been mailed to:

ERIC D. JONES, Esq.
PAUL B. EPISCOPE, Esq.
Paul B. Episcope, L.L.C.
77 West Washington Street
Suite 300
Chicago, IL 60602

Attorneys for Plaintiff, Lucas DiLeo,
 a Minor, by Frank DiLeo, his
 Father and Next Friend

HOWARD T. TRAFMAN, Esq.
Meachum & Trafman
10 South LaSalle Street
Suite 2800
Chicago, IL 60603

Attorneys for Defendant/Third-Party
 Plaintiff, Vi-Jon Laboratories, Inc.

STEVEN M. MAHONEY, Esq.
Law Offices of Thaddeus J. Gustafson
Two North LaSalle Street
Suite 2510
Chicago, IL 60602

Attorneys for Third-Party Defendant,
 American Marketing Enterprises, Inc.

THOMAS G. DENT, Esq.
1268 Winwood Drive
Lake Forest, IL 60045

Attorney for Third-Party Defendant/
 Counter-Plaintiff, Theresa DiLeo

CHRISTIAN NOVAY, Esq.
DANIEL E. TRANEN, Esq.
Wilson, Elser, Moskowitz, Edelman
 & Dicker
120 North LaSalle Street
Suite 2600
Chicago, IL 60602

Attorneys for Third-Party Defendant,
 Pretium Packaging

DOMINICK W. SAVAIANO, Esq.
R. BARON RINGHOFER, Esq.
Clausen Miller, P.C.
10 South LaSalle Street
Chicago, IL 60603

Attorneys for Third-Party Defendants, Berry
 Plastics Corporation and Poly-Seal Corporation

KEVIN G. OWENS, Esq.
MEANITH HUON, Esq.
JULIE E. BENES, Esq.
Johnson & Bell, Ltd.
55 East Monroe Street
Suite 4100
Chicago, IL 60603

Attorneys for Defendant, Disney Enterprises, Inc.