## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **LUCA DILEO**, a Minor, by<br>**FRANK DILEO**, his Father and<br>Next Friend, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 05 CV 2877 |
| v. | ) ) ) | Magistrate Judge<br>Martin C. Ashman |
| **VI-JON LABORATORIES, INC.**, and<br>**DISNEY ENTERPRISES, INC.**, | ) ) ) ) ) | |
| Defendants,<br>Cross-Claimants, and<br>Cross-Defendants. | ) ) ) ) ) | |

------------------------------------------------------- )

|  |  |
|---|---|
|  | ) ) ) |
| **VI-JON LABORATORIES, INC.**, | ) ) ) |
| Third-Party Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| **PRETIUM PACKAGING, L.L.C.,**<br>**POLY-SEAL CORPORATION,**<br>**BERRY PLASTICS CORPORATION**<br>f/k/a **POLY-SEAL CORPORATION,**<br>**BERRY PLASTICS, AMERICAN**<br>**MARKETING ENTERPRISES, INC.,**<br>**PCA APPAREL INDUSTRIES, INC.,**<br>**CHEMISPHERE CORPORATION,** | ) ) ) ) ) ) ) ) ) |
| Third-Party Defendants. | ) ) ) |

------------------------------------------------------- )

| | |
|---|---|
| **DISNEY ENTERPRISES, INC.,** | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **AMERICAN MARKETING** | ) |
| **ENTERPRISES, INC.,** and | ) |
| **PCA APPAREL INDUSTRIES, INC.,** | ) |
| | ) |
| Third-Party Defendants. | ) |
| ------------------------------------------------------------- | ) |
| | ) |
| **VI-JON LABORATORIES, INC.,** | ) |
| | ) |
| Third-Party Plaintiffs and | ) |
| Counter-Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| **THERESA DILEO,** | ) |
| | ) |
| Third-Party Defendant and | ) |
| Counter-Claimant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Luca Dileo ("Dileo"), sued Vi-Jon Laboratories, Inc. ("Vi-Jon"), and Disney

Enterprises, Inc. ("Disney"). Among other subsequent litigation activities occurring in this case,

Vi-Jon then sued Pretium Packaging, L.L.C. ("Pretium"), Poly-Seal Corporation ("Poly-Seal"),

Berry Plastics Corporation ("Berry"), American Marketing Enterprises, Inc. ("American

Marketing"), PCA Apparel Industries, Inc. ("PCA"), and Chemisphere Corporation

("Chemisphere"), by filing a third-party complaint. Currently before this Court is Chemisphere's

Petition to Approve Settlement and For Good Faith Finding ("Chemisphere's Motion" or

"Motion"). The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c); N.D. Ill. L.R. 73.1. For the reasons stated below, the Court denies Chemisphere's Motion.

## I.  Background

Although this Motion does not depend on the facts of the underlying action, the Court briefly describes them for context. The complaint alleged that, on November 6, 2001, Dileo, who at the time was three years old and a resident of Cook County, Illinois, handled a bottle of American Fare Nail Polish Remover manufactured by Vi-Jon. (Compl. ¶¶ 2, 12.) At some point, the nail polish remover spilled on the floor near Dileo, who happened to be near a gas-fired stove that had an operating pilot light. (Compl. ¶ 12.) The vapors from the nail polish remover then ignited, and the flames spread to Dileo's body and Disney-branded pajamas. (Compl. ¶¶ 4, 9-10, 12.) As a result, Dileo suffered serious injuries. (Compl. ¶ 12.)

Dileo originally filed the complaint in the Circuit Court of Cook County, but Disney removed the case to the United States District Court for the Northern District of Illinois. The district judge dismissed the state "complaint without prejudice to the filing of a proper amended federal complaint or timely motion to remand." Dileo then filed an amended complaint. Amended answers from various defendants followed. Additionally, Disney filed, pursuant to FED. R. CIV. P. 14(a), a third-party complaint against PCA and American Marketing. Not wanting to be left out of the lawsuit party, Vi-Jon filed, pursuant to FED. R. CIV. P. 14(a), third-party complaints against Frank Dileo, PCA, American Marketing, Berry, Poly-Seal, Chemisphere, and

Pretium. Vi-Jon and Disney also asserted counterclaims against each other. Frank Dileo is no longer a party to this lawsuit.

Since Dileo filed an amended complaint in this District, the parties have been negotiating settlement. In fact, a settlement as to at least some parties has been reached. On June 17, 2009, the parties appeared before this Court on Plaintiff's Petition to Approve Settlement and For Good Faith Finding as to Disney and PCA, as well as Chemisphere's Motion. The Court granted Plaintiff's petition (Dckt. 259), and took Chemisphere's Motion, which requested the Court to enter a good faith finding as to a settlement it had agreed to with Vi-Jon ("the Vi-Jon Settlement"), under advisement.[1] Pretium currently opposes Chemisphere's Motion.

## II.   Discussion

### A.   Governing Law

28 U.S.C. § 1332(a), which provides federal jurisdiction in diversity cases, is the basis for subject matter jurisdiction in this case. In a diversity case, the court applies the substantive law of the forum state. *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) (reaffirming the general principle from *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991), that federal courts apply the law in which the court sits absent a conflict between the parties). Because Dileo filed the tort claim in Illinois and neither party contests the issue of which law governs, the Court applies Illinois law. The Court decides this matter as it believes the Illinois Supreme Court would. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090

---

[1] The other terms of the Vi-Jon Settlement are not important to the resolution of this case, so the Court does not recount them here.

(7th Cir. 1999) ("As a court sitting in diversity, we attempt to predict how the [state's] [s]upreme

[c]ourt would decide the issues presented here."). To make this assessment, the Court gives

"'proper regard' to other Illinois courts' rulings." *Estate of Bowgren v. Comm'r of Internal*

*Revenue*, 105 F.3d 1156, 1161 (7th Cir. 1997). In other words, "[w]here the state supreme court

has not ruled on an issue, decisions of the state appellate courts control, unless there are

persuasive indications that the state supreme court would decide the issue differently." *Lexington*,

165 F.3d at 1090.


### B.     The Contribution Act's Language and Purpose

In Illinois, the Joint Tortfeasor Contribution Act ("the Contribution Act" or "the Act")

provides the basis upon which Chemisphere requests a finding of "good faith" as to the Vi-Jon

Settlement. 740 ILL. COMP. STAT. 100/0.01 *et seq.* The Contribution Act provides "a right of

contribution" among "[two] or more persons . . . subject to liability in tort arising out of the same

injury to person or property, or the same wrongful death." 740 ILL. COMP. STAT. 100/2(a). That

right, however, "exists only in favor of a tortfeasor who has paid more than his pro rata share of

the common liability." 740 ILL. COMP. STAT. 100/2(b). Furthermore, the tortfeasor's total

recovery is limited to the amount it paid over and above its pro rata share. *Id.*

A tortfeasor, however, may limit its contribution by settling in "good faith." Section

100/2(c) states that a settlement made in good faith

> to one or more persons liable in tort arising out of the same injury
> or the same wrongful death[] . . . does not discharge any of the
> other tortfeasors from liability for the injury or wrongful death
> unless its terms so provide but it reduces the recovery on any claim
> against the others to the extent of any amount stated in the release

or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 ILL. COMP. STAT. 100/2(c). The court, not the parties, determines whether an agreement was made in good faith. *Johnson v. Johnson*, 898 N.E.2d 145, 173 (Ill. App. Ct. 2008), *appeal denied*, 902 N.E.2d 1084 (Ill. 2009). The two provisions of the Contribution Act that follow 100/2(c) explain the effect of a "good faith" settlement on tortfeasors settling with a "claimant." 740 ILL. COMP. STAT. 100/2(d), (e).

Section 100/2(d) states that "[t]he tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." 740 ILL. COMP. STAT. 100/2(d). Section 100/2(e) explains the inability of a settling tortfeasor to recover contributions from non-settling tortfeasors: "[a] tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILL. COMP. STAT. 100/2(e).

Typically, the parties seeking a good faith finding under the Contribution Act are the plaintiff and at least one tortfeasor. *E.g.*, *Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 448-49, 455-56 (Ill. App. Ct. 2000) (where the court found a good faith settlement existed between the plaintiff and the defendant, which extinguished the remaining tortfeasor's claim to contribution from the defendant). Here, however, two tortfeasors–Vi-Jon (the third-party plaintiff) and Chemisphere (the third-party defendant)–have settled with each other.[2] There is nothing extraordinary about two settling tortfeasors. Nor is there anything unusual about two tortfeasors settling with each other in good faith. In this case, though, Vi-Jon and Chemisphere

---

[2] The defendant and third-party plaintiff, as well as the third-party defendants, will, for the reader's sake, hereinafter be referred to as "tortfeasors."

have "request[ed] that this [C]ourt . . . enter an order dismissing [Chemisphere] from this lawsuit with prejudice and for a specific finding that the settlement was made in good faith [under section 100/2(c) of the Contribution Act], *thereby extinguishing any and all contribution actions that may be held by other parties.*" (Chemisphere's Mot. 2-3 (emphasis added).)

Pretium Packaging has opposed this motion, arguing that "a good faith finding can only [*sic*] be found between a settling tortfeasor and the [p]laintiff." (Pretium's Opp'n 1.) The reason, according to Pretium, is because a good faith finding here "would affect the rights and claims of other non-settling tortfeasors." (*Id.*) Pretium also argues that sections 100/2(d) and (e) allow tortfeasors to settle only with a "claimant," a label that it contends does not apply to Chemisphere. (*Id.* at 2.)

Chemisphere responds in two ways. First, it argues that the plain language of 100/2(c) does not prohibit two tortfeasors from settling in good faith. (Chemisphere's Reply 2.) It argues that, because "the Act is silent regarding with whom a third-party defendant may settle in good faith," the Contribution Act does not prevent such a settlement. (*Id.*) Second, Chemisphere contends that, even if Pretium is correct that the Contribution Act permits tortfeasors to settle with only the "claimant," Pretium's argument fails because Vi-Jon, as a tortfeasor with a claim for contribution, is a "claimant" under sections 100/2(d) and (e). (*Id.* at 6-8.)

No court, including the Illinois Supreme Court, has decided whether two tortfeasors may settle in good faith under section 100/2(c) of the Contribution Act and thereby limit tortfeasor liability.

1.    The Plain Language of 100/2(c)

The Court first addresses Chemisphere's argument that a tortfeasor may settle with a party other than the "claimant" because section 100/2(c) of the "Contribution Act is silent regarding this issue." (Chemisphere's Reply 2.) While Chemisphere does not explain the details of this argument, it seems to rely on the following language of section 100/2(c): "[w]hen a release or covenant not to sue or not to enforce judgment *is given in good faith to one or more persons liable in tort arising out of the same injury . . . .*" (Emphasis added.) Because, the argument goes, the statute refers to only "one or more persons liable in tort," it could apply to two tortfeasors.

The statute, however, goes on: "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury . . . it does not discharge any of the other tortfeasors from liability for the injury or wrongful death *unless its terms so provide . . . .*" 740 ILL. COMP. STAT. 100/2(c) (emphasis added). This additional language dooms Chemisphere's argument. The language contemplates that one of the settling parties will have the *ability* to "discharge any of the other tortfeasors." And, although section 100/2(c), by default rule, does not discharge the tortfeasors, it allows the settling parties to do so in the settlement agreement. Two settling tortfeasors–regardless of whether they are co-defendants or, as here, a third-party plaintiff and a third-party defendant–cannot discharge other, non-settling tortfeasors' liability. Such a rule would unravel the plaintiff's claims without giving her a chance to sell or litigate them first. For that reason, the Court rejects Chemisphere's argument that the plain language of section 100/2(c) does not bar its settlement in good faith.[3]

---

[3] The Court also notes that Illinois courts, when discussing 100/2(c), have intimated that the settling parties must include the plaintiff. *E.g.*, *Johnson v. United Airlines*, 784 N.E.2d 812,

(continued...)

2.      The Language of Sections (c), (d), and (e)

Having rejected Chemisphere's argument that section 100/2(c) fails to restrict the identity

of the settling parties, the Court now turns to the parties' primary dispute: the meaning of the

term "claimant." Put in statutory terms, the parties' disagreement concerns sections 100/2(c), (d),

and (e), which detail the specific application of the Contribution Act. Essentially, the parties call

upon the Court to interpret the term "claimant" as used in sections 100/2(d) and (e)–Chemisphere

argues that "claimant" means tortfeasor with a contribution claim,[4] and Pretium argues that

"claimant" means only the plaintiff in the underlying litigation.

To determine the meaning of the word, the Court first looks to the statute's text. *Carter v.*

*United States*, 530 U.S. 255, 271 (2000) ("In analyzing a statute, we begin by examining the

text[.]"). Although the statutes "'frequently [contain] words of general meaning[,] . . . , [which

are] broad enough to include an act in question,'" those meanings should be narrowed where "'a

consideration of the whole legislation, or of the circumstances surrounding its enactment, or of

the absurd results which follow from giving such broad meaning to the words, makes it

unreasonable to believe that the legislator intended to include the particular act.'" *Pub. Citizen v.*

*U.S. Dept. of Justice,* 491 U.S. 440, 454 (1989) (quoting *Church of the Holy Trinity v. United*

*States*, 143 U.S. 457, 459 (1892)). Thus, while the court must start its interpretational inquiry

---

[3](...continued)
820 (Ill. 2003) (holding that "'[n]onsettling defendants in a contribution setting are not parties to
the settlements *entered into between a plaintiff and a settling tortfeasor*'" (quoting *Bowers v.*
*Murphy & Miller, Inc.*, 650 N.E.2d 608, 611 (Ill. App. Ct. 1995) (emphasis added))).

[4]   Specifically, Chemisphere argues that "claimant" means "third-party plaintiff."
(Chemisphere's Reply 6.)

with the plain language, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with [the legislature's] intention[.]" *Pub. Citizen*, 491 U.S. at 455. In other words, the dictionary's binding does not glue the court to interpretations contained in its pages, which are devoid of the statute's purpose or object. *Id.*

In this case, if the good faith provision operates as to the settlement between Chemisphere and Vi-Jon, it "discharges [Chemisphere] from all liability for any contribution to" other non-settling tortfeasors: Pretium, Poly-Seal, Berry, PCA, and American Marketing. *See* 740 ILL. COMP. STAT. 100/2(d). This type of agreement has several consequences.

First, it excludes the plaintiff's involvement in the settlement agreement. That is problematic because the plaintiff determines whether a tortfeasor has paid its fair share, thereby extinguishing its liability to other tortfeasors for contribution. In other words, it is the plaintiff, not the tortfeasor(s), who must be involved in determining each tortfeasor's "fair share" of liability. This requirement allows courts to encourage settlements and "guard[] against unfair dealing, collusion, or other wrongful conduct on the part of the settling parties." *Schramm v. County of Monroe*, 758 N.E.2d 880, 884 (Ill. App. Ct. 2001).

Second, it unjustifiably places one tortfeasor (the third-party plaintiff) in an advantageous bargaining position vis-á-vis the other tortfeasors (the third-party defendants).[5] In this scenario, a settlement between two tortfeasors can extinguish contribution claims of other tortfeasors. That

---

[5] Third-party defendants can, of course, counterclaim and become "claimants," at least as Chemisphere uses the term. FED. R. CIV. P. 14(a)(2)(B). That further complicates matters because two tortfeasors could, as happened here, become claimants as to each other. In that case, a good faith settlement between them would extinguish each tortfeasor's entire liability as to every other tortfeasor not a party to the settlement.

- 10 -

encourages tortfeasors, *in an attempt to limit their own contribution*, to settle on terms favorable to another tortfeasor–in this case Vi-Jon. But the Contribution Act, as will be shown below, was designed to encourage *equitable contribution*, not to encourage a "race to the bottom." Yet, the reading Chemisphere advocates does just this, encouraging tortfeasors to settle their contribution claims at the lowest possible rate, which could shift a disproportionate share of liability onto the non-settling tortfeasors. Furthermore, there is no reason that a tortfeasor who settles with another tortfeasor should receive any statutory advantage over the other non-settling tortfeasors, especially considering all tortfeasors–irrespective of their status as third-party plaintiffs or third-party defendants–are potentially liable for the plaintiff's injury.

Third, and relatedly, the effect of the agreement unfairly prejudices other defendants. Under the reading of "claimant" Chemisphere advocates, the agreement *between two tortfeasors* would prevent any other non-settling tortfeasor[6] from seeking contribution from Chemisphere even though the plaintiff was not a party to the agreement.

Those results are absurd given that the purpose of the Contribution Act was to encourage settlements and the *equitable* sharing of damages among tortfeasors according to their relative culpability. *See Doyle v. Rhodes*, 461 N.E.2d 382, 388 (Ill. 1984) (stating that the Contribution Act focuses "on the culpability of the parties rather than on the precise legal means[–i.e., indemnity or contribution–]by which the plaintiff is ultimately able to make each defendant compensate him for his loss"); *Va. Sur. Co., Inc. v. N. Ins. Co.*, 866 N.E.2d 149, 154 (Ill. 2007). The Illinois Supreme Court's adoption of pro rata contribution among tortfeasors grew out of judicial discontent with unfairness inherent in the doctrine of indemnity. *Skinner v. Reed-*

---

[6] Here this includes at least Pretium, Poly-Seal, Berry, PCA, and American Marketing.

*Prentice Div. Package Mach. Co.*, 374 N.E.2d 437, 440-42 (Ill. 1978). Indeed, the Contribution Act codified and clarified the Illinois Supreme Court's decision in *Skinner*, 374 N.E.2d at 442, which, based on principles of equity, abolished indemnity in favor of contribution. *Va. Sur. Co.*, 866 N.E.2d at 154; *Doyle*, 461 N.E.2d at 385-86, 387-88. The Contribution Act's "good faith" requirement furthered the legislature's equitable goal: it was designed to ensure "the nonsettling defendant(s) with a fair and reasonable setoff in light of the parties' estimated fault and potential financial exposure." *Stickler v. Am. Augers, Inc.*, 757 N.E.2d 573, 577-78 (Ill. App. Ct. 2001). Thus, "[a]n agreement cannot be construed as a good-faith settlement under the Contribution Act if the effect of the settlement shifts a disproportionally large and inequitable portion of the settling defendant's liability onto the shoulders of another." *Associated Aviation Underwriters, Inc. v. Aon Corp.*, 800 N.E.2d 424, 435 (Ill. App. Ct. 2003).

Given that the purpose of the Contribution Act was to encourage an equitable distribution of liability and encourage settlement, Chemisphere's argument must fail. Chemisphere's position would allow it to extinguish the other tortfeasors' contribution claims against Chemisphere. That, in turn, would create doubt as to the equity of any contribution claims made thereafter, place Vi-Jon in an unfair bargaining position, and encourage a "race to the bottom" among the remaining defendants. In other words, the "concert of action by [Vi-Jon and Chemisphere] [would] deprive[] [other tortfeasors, including Pretium,] of their rights under the Contribution Act by causing them to pay a potentially higher amount than their *pro rata* share." *Associated Aviation*, 800 N.E.2d at 435 (emphasis in original). Furthermore, an entry of good faith as to the Vi-Jon settlement would allow Chemisphere to discharge its contribution requirement without

the plaintiff's consent. This exclusion would necessarily raise questions of fairness because the claims belong to the plaintiff, and so does the determination of liability through settlement.

Because other third-party defendants would still be liable for contribution, but could not seek it from Chemisphere or Vi-Jon, the Contribution Act's purpose would not be served; thus, a settlement between two tortfeasors could never be "in good faith" under section 100/2(c). Therefore, the Court finds that the term "claimant," as used in sections 100/2(d) and (e) of the Contribution Act, means "the plaintiff in the underlying action."

Although no court has squarely addressed this issue, this result accords with the interpretations Illinois courts would likely favor. At least one court, in *dictum*, has interpreted the word "claimant" to mean "injured party." In *Warsing v. Material Handling Servs., Inc.*, the court made the following statement, citing 740 ILL. COMP. STAT. 100/2(c) and (d): "when a tort-feasor settles in *good faith with the injured party*, that tort-feasor is discharged from contribution liability, and the remaining tort-feasors' liability is reduced by the amount of the settlement." 648 N.E.2d 1126, 1129 (Ill App. Ct. 1995) (emphasis added), *abrogated on other grounds by Johnson v. United Airlines*, 784 N.E.2d 812 (Ill. 2003). This statement implies that a tortfeasor may settle with only the injured party; that is, the plaintiff in the underlying action.

## C. Additional Supporting Language

Additionally, the Court finds support for its interpretation of the word "claimant" in what was formerly section 100/5 of the Contribution Act. Although the Illinois Supreme Court has held section 100/5 unconstitutional on grounds of severability, the section's language provides further insight into the meaning of the term, "claimant." *Best v. Taylor Mach. Works*, 689 N.E.2d

1057, 1062 (Ill. 1997) (holding 740 ILL. COMP. STAT. 100/5 unconstitutional because it was not severable from Public Act 89-7). This section read:

> Other than in actions for healing art malpractice, a cause of action for contribution among joint tortfeasors is not required to be asserted *during the pendency of litigation brought by a claimant* and may be asserted by a *separate action before or after payment of a settlement or judgment in favor of the claimant,* or may be asserted by counterclaim or by third-party complaint in a pending action.

740 ILL. COMP. STAT. 100/5 (emphasis added), *invalidated by Best*, 689 N.E.2d at 1062).

This language indicates that "claimant" means "plaintiff in the underlying action," and not "tortfeasor," regardless of the tortfeasor's classification as defendant, third-party defendant, or third-party plaintiff. If "claimant" meant "tortfeasor with a contribution claim," the provision would make no sense. Under this meaning, the tortfeasor would "not be required to [assert] [a contribution claim against a third-party defendant] during the pendency of the litigation brought by [the tortfeasor]." That is illogical: when a tortfeasor brings a contribution claim against a third-party defendant, the pendency of litigation concerns contribution; thus, it makes little sense to "not . . . require[]" the defendant to assert the contribution claim because it already has done so.

The nonsensical consequences of this interpretation, however, would not cease there. This reading of the word "claimant" also would mean that the tortfeasor could "[assert] [a contribution claim] by a separate action before or after payment of a settlement or judgment in favor of the [the tortfeasor]." Again, this is incoherent babble: the tortfeasor would not assert a contribution claim after payment in his favor. Indeed, a judgment in the tortfeasor's favor would obviate the

need for contribution: a payment in the tortfeasor's favor *is* contribution, and a settlement in favor of the tortfeasor cannot exist because all settlements will be in favor of the plaintiff.

Neither of these results is logical, and neither is commanded by the language or purpose of the Contribution Act. Here, the statute's purpose, language, and structure all demonstrate that "claimant" means "plaintiff in the underlying action." Since no "settlement agreement [can] satisfy the good-faith requirement if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Act," *Johnson*, 784 N.E.2d at 821, the Court rejects Chemisphere's arguments. Thus, the Court finds that "claimant" means "the plaintiff in the underlying action." In this case, that means that Vi-Jon cannot be a "claimant" since Dileo, not Vi-Jon, is the plaintiff in the underlying action. Therefore, the Court will not enter a good faith finding under section 100/2(c) of the Act as to the Vi-Jon settlement.

### III. Conclusion

For all of the aforementioned reasons, the Court holds that the Contribution Act prevents it from finding that Vi-Jon and Chemisphere entered into a good-faith settlement under section 100/2(c) of the Contribution Act. Therefore, the Court denies Chemisphere's Motion.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: July 14, 2009.

- 15 -